FILED
IN CLERKS OFFICE

2022 JAN 31 PM 2: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

**UNITED STATES OF AMERICA ex rel TOMASA HEISKELL, Relator,**

**TOMASA HEISKELL**

Plaintiffs,

v.

**MARIO BIANCO**

Defendant.

FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)(2)

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. Qui tam plaintiff, Tomasa Heiskell, is domiciled in Randolph, Massachusetts. Ms. Heiskall is a 50-year-old single mother of two, living with multiple disabilities. Ms. Heiskell immigrated to America from Peru in 2003. Since living in Massachusetts, she has worked part time doing various sewing and tailoring work. Because of Ms. Heiskell extremely limited income, she qualifies for rental assistance through the federal rent subsidy program that is overseen by the United States Department of Housing and Urban Development ("HUD") and is referred to as the Housing Choice Voucher Program ("HCVP"), or more commonly, "Section 8." This program provides that an eligible tenant, who is renting privately-owned housing, pays between 30 to 40 percent of their adjusted monthly income towards rent and utility costs, while the plaintiff federal government, acting through a local public housing agency, supplies the remaining rent balance directly to the owner of the property. Here, the Defendant was in a lease agreement with Ms. Heiskell, and further in a Housing Assistance Payment contract

("HAP contract") with both Ms. Heiskell and the federal government, as the HAP contract is subsidized by the Section 8 program and administered by the Cambridge Housing Authority (a subcontractor to the Massachusetts Department of Housing and Community Development, ("DHCD")). Part B(7)(d) of the HAP Contract states that "Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term"). Defendant breached the HAP contract by requesting and accepting additional monthly payments from Ms. Heiskell, while collecting the agreed to monthly rent from both Ms. Heiskell and the federal government's Section 8 rental assistance program.

2. The defendant's actions caused Ms. Heiskell to suffer economic harm and emotional distress.
3. This action is brought under the False Claims Act, 31 U.S.C. §3729, et seq., and Chapter 93A of Massachusetts General Laws, common law breach of contract, and breach of quiet enjoyment.
4. Plaintiff, Tomasa Heiskell seeks actual damages as a result of the breach of contract, damages under the Massachusetts consumer protection law and the statutory share of any False Claims Act award made to the United States, in addition to costs and reasonable attorney fees. The United States seeks all remedies available under the False Claims Act.

## II. PARTIES

5. Plaintiff, Tomasa Heiskell, was a tenant of the defendant at premises located at 34 Lowe Street, Quincy, MA ("the Premises") from February 1, 2012 to on or about March 31, 2019.

6. Plaintiff United States of America is *ex rel.* Tomasa Heiskell.

7. Defendant Mario Bianco was an owner and landlord of the premises at the commencement of Ms. Heiskell's tenancy and at all times relevant to this Complaint. Mario Bianco resides in Quincy, Massachusetts and, on information and belief is engaged in commerce, leasing residential dwelling units in Quincy MA.

8. The defendant did not occupy a dwelling unit at the subject property at any time relevant to this complaint.

## III. JURISDICTION

9. This court has jurisdiction over the federal claim pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732.

10. This court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367.

## IV. VENUE

11. Venue is proper in the District of Massachusetts pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. § 1391(b)(1) and (2) because this is an action under section 3730 of Title 31 brought in the district where the defendant resides, transacts business, where the acts proscribed by section 3729 of Title 31 occurred and where the events giving rise to the claims occurred and also pursuant to 28 U.S.C. §1395 (a) because this is civil proceeding for the recovery of a pecuniary fine, penalty or forfeiture being prosecuted in the district where this proceeding accrued and the defendant is found.

## V. HOUSING CHOICE VOUCHER PROGRAM (SECTION 8)

12. The Section 8 Housing Choice Voucher Program is a federal program intended to assist low-income families in obtaining decent, safe, sanitary, and affordable housing and is

authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. §1437f. Regulations governing the Section 8 program are contained in 24 C.F.R. Part 982.

13. The pertinent federal regulations promulgated to implement the Act provide that under the Section 8 Housing Choice Voucher Program, a tenant family enters into a lease with a landlord/owner that continues until its expiration or termination by the owner, the participant family, or by the public housing agency ("PHA"). Generally, the participants pay 30 to 40 percent of their adjusted monthly income, toward the rent and utilities, as does the plaintiff, or in certain cases, slightly more, while the PHA pays the balance. 23 C.F.R. Part 982.

14. HUD administers the Section 8 program.

15. HUD enters into annual contribution contracts with public housing agencies such as Massachusetts DHCD, which subcontracts with local agencies such as Cambridge Housing Authority ("CHA") to administer the Section 8 program at the local level.

16. Pursuant to an annual contribution contract, the public housing agency ("PHA") may enter into a HAP contract with the landlord of a dwelling unit to make monthly housing assistance payments on behalf of an eligible tenant.

17. The landlord simultaneously enters into a lease for the dwelling unit with the tenant. The lease must contain federally-mandated terms or be on a HUD form, and the landlord must agree to incorporate by reference the HUD Tenancy Addendum referenced as Part C. of the HAP contract.

18. The HAP contract establishes the initial lease term and initial total monthly rent to the landlord. The landlord may not increase the total rent payable to the landlord during the initial lease term.

19. The HAP also sets out the amount of the housing assistance payment by the PHA to the landlord, calculated in accordance with the regulations.

20. The HAP contract provides that the tenant is responsible for paying the landlord the balance of the total rent not covered by the housing assistance payment.

21. The amount of the PHA's monthly housing assistance payment to the landlord is determined in accordance with HUD regulations for the Section 8 program.

22. The sum of the housing assistance payment and the tenant's share of the rent payable to the landlord are known as the "rent to owner."

## VI. STATEMENT OF FACTS

23. At all times hereafter mentioned, plaintiff Tomasa Heiskell was a recipient of housing assistance from CHA under the Section 8 program.

24. Tomasa Heiskell's rent is subsidized through the "Section 8 Housing Choice Voucher Program," administered by CHA. Pursuant to this program, Ms. Heiskell's portion of the rent for this unit is a percentage of her income and CHA pays the difference between the full contract rent and Ms. Heiskell's portion.

25. The Section 8 program is governed by 42 U.S.C. § 1437 and its basic purpose is to provide lower income individuals and families with safe, decent and sanitary housing. The federal regulations that implement this statute are found at 24 C.F.R. Part 982.

26. On or about February 1, 2012, the landlord and tenant executed a lease to rent the premises at ("the Premises" or "the subject property") for an initial term of one-year, at a rent of $1458 per month, to commence on February 1, 2012.

27. On or about February 2, 2012, defendant, Mario Bianco approached Ms. Heiskell and demanded that Ms. Heiskell pay an additional $100 in cash each month. During that

conversation, defendant Mario Bianco asked Ms. Heiskell to sign a document agreeing to make the additional payment, often referred to as a "side payment."

28. Defendant Mario Bianco provided Ms. Heiskell with a copy of the signed document.

29. The HAP contract, Part C paragraph 5(e) states, "the owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner."

30. During every month of tenancy between February 2, 2012 until on or about June 1, 2013, Ms. Heiskell tendered side payments of $100 in cash to the defendant in addition to her scheduled monthly rent. Ms. Heiskell tendered 16 monthly payments of $100 to Defendant for a total of $1,600.

31. On or about July 1, 2013, Ms. Heiskell got a dog.

32. After the landlord learned of Ms. Heiskell's dogs, he demanded that Ms. Heiskell tender an additional $100 month for the dog and because Ms. Heiskell's boyfriend would occasional spend the night. Ms. Heiskell agreed to the additional $100, bringing the total monthly side payment to $200. Defendant did not inform CHA of this requested increase and no changes were made to the HAP contract.

33. During every month of tenancy between July 2013 until on or about November 2018 Ms. Heiskell tendered side payments of $200 in cash, in addition to her scheduled monthly rent. Ms. Heiskell tendered 64 monthly payments of $200 to Defendant for a total of $12,800.

34. During each month of Ms. Heiskell's tenancy, Defendant would come in person to Ms. Heiskell's residence to collect the monthly rent and the additional side payment.

35. Over the course of the tenancy, Ms. Heiskell tendered a total of $14,400 of side payments to defendant, Mario Bianco.

36. Ms. Heiskell occupied the premises leased from the defendant continuously from February 1, 2012 until on or about March 31, 2019

37. CHA paid defendant housing assistance payments each month during the entire course of the tenancy.

38. Throughout Ms. Heiskell's participation in its Section 8 Program, CHA operated as a subcontractor under an annual contribution contract with HUD pursuant to which HUD provided the money to pay housing assistance on Ms. Heiskell's behalf.

39. Neither CHA nor HUD authorized the defendant to demand or accept any rent in excess of the amounts prescribed in the HAP contract.

40. The defendant, Mario Bianco never informed Ms. Heiskell that the HAP and Section 8 rules prohibited him from seeking these additional rent payments from her.

41. On or about November 2018, Defendant requested that Ms. Heiskell agree to rental increase through CHA and continue the $200 side payments. Ms. Heiskell stated she would agree to the rental increase through CHA, but would no longer tender the additional $200 in side payments.

42. Ms. Heiskell vacated the premises on or about March 31, 2019.

## VII. CAUSES OF ACTION

### A. FIRST CAUSE OF ACTION – VIOLATION OF THE FALSE CLAIMS ACT

43. The allegations set forth in paragraphs 1 through 42 are incorporated by reference as though pleaded herein in full.

44. The False Claims Act ("FCA") provides that any person who "knowingly presents…a false or fraudulent claim for payment or approval" to the United States is liable on each such claim for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the United States. In addition, any person who violates the FCA is liable for the costs of the civil action brought to recover such penalty or damages. 31 U.S.C. §3729(a).

45. The FCA defines the term "knowing" and "knowingly" as meaning, with respect to information, that a person "(l) has actual knowledge of the information: (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. §3729(b).

46. The FCA defines a "claim" as "any request or demand for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. §3729(c).

47. For each of the 80 months that defendant, Mario Bianco accepted the "side payments" from Ms. Heiskell, the defendant also accepted the housing payments tendered by CHA.

48. Defendant agreed in Part B, paragraph 8 of the HAP contract that "During the term of this contract, the owner certifies that: . . . ( d) Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term," and further agreed in Part C, paragraphs 5(e) and (f): "(e) The

owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent the owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease. (f) The owner must immediately return any excess rent payment to the tenant."

49. Defendant, Mario Bianco knowingly accepted for payment 80 separate housing assistance tenders from CHA, while receiving additional payments from Ms. Heiskell.

50. Defendant's acceptance of assistance payments for each month, while they knowingly accepted additional "side payments" from Ms. Heiskell, constitutes a separate false claims or representation against the United States.

51. The United States of America suffered damages as a result of violations of the False Claims Act, because the money which HUD disbursed to CHA for payment of Section 8 housing assistance would not have been paid to the defendant absent their failure to comply with the HAP contract, and their false claims and misrepresentations.

52. The United States sustained damages equal to all payments made to the defendant pursuant to Tomasa Heiskell's Section 8 assistance program, for which the defendant also received "additional rent payments" from Ms. Heiskell.

**B. SECOND CAUSE OF ACTION - VIOLATION OF M.G.L. c.93A**

53. The allegations set forth in paragraphs 1 through 52 are incorporated by reference as though pleaded herein in full.

54. The defendant demand that the plaintiff pay rent in excess of the contract rent agreed to by the parties, is an unfair and deceptive practice under Massachusetts General Laws Chapter 93A.

55. The defendant knowing and willful failure to comply with the express terms of the HAP contract, including the HUD Tenancy Addendum, constitute unfair and deceptive practices under Massachusetts General Laws Chapter 93A, and caused substantial injury to the plaintiff Tomasa Heiskell.

56. The defendant's actions were undertaken in the conduct of trade or commerce, in that the defendant offers or offered apartments for rent.

57. The defendant's actions have caused the plaintiff pecuniary loss.

**C. THIRD CAUSE OF ACTION - BREACH OF CONTRACT**

58. The allegations set forth in paragraphs 1 through 57 are incorporated by reference as though pleaded herein in full.

59. Between July 2013 and November 2018, the defendant, Mario Bianco repeatedly demanded that the plaintiff Tomasa Heiskell pay substantial amounts of rent in excess of the defendant's contractual obligations.

60. At the commencement of Ms. Heiskell's tenancy, and continuing for all periods relevant thereafter, the defendant agreed to incorporate by reference the HUD Tenancy Addendum (also referred to as "Part C" of the HAP contract) into the lease between the landlord and the tenant.

61. The landlord agreed that Tenancy Addendum could be enforced by the tenant against the landlord.

62. The landlord's demand and acceptance of payments from the tenant, in excess of his contractual obligations, constitutes a breach of contract.

63. The defendant was unjustly enriched by the acceptance of side payments from the plaintiff Tomasa Heiskell.

64. The plaintiff Tomasa Heiskell sustained losses of $14,400 as a result of the defendant's breach of contract.

### D. FOURTH CAUSE OF ACTION - BREACH OF QUIET ENJOYMENT – VIOLATION OF M.G.L. c. 186, §14

65. The allegations set forth in paragraphs 1 through 64 are incorporated by reference as though pleaded herein in full.

66. In and by the lease, defendant covenanted with plaintiff that it should peacefully occupy and enjoy the premises for and during the term of the lease.

67. Plaintiff Tomasa Heiskell has duly performed all the conditions and covenants of the lease on its part to be performed.

68. Defendant, Mario Bianco has interfered with and prevented plaintiff's peaceful and quiet enjoyment of the premises in that Defendant would enter Ms. Heiskell's apartment on multiple occasions without prior warning.

69. Defendant, resided across the street from the Premises and made comments to Ms. Heiskell about things he saw through the window in her apartment particularly regarding any guests or visitors to the Premises.

70. Defendant would ask questions about people who were coming and going from the apartment and on one occasion visited the apartment when Ms. Heiskell's daughter was home alone with her friends.

71. Defendant would often stop at the Premises to go to the attic which was located in Ms. Heiskell's apartment. Defendant did not provide notice and would demand access.

72. Defendant would attempt to hug Ms. Heiskell and often made comments about wanting to be friends, which caused Ms. Heiskell to be very uncomfortable and scared anytime Defendant was around.

73. The laundry facilities were in the basement of the premises, and on many occasions, Defendant would be in the basement while Ms. Heiskell was doing laundry which caused her to be fearful, anxious and afraid.

74. Ms. Heiskell thereby suffered great emotional distress, and inconvenience, along with loss of privacy and extreme paranoia. Additionally, her physical and mental health were impacted by Defendant's actions causing her to miss work and struggle with other daily activities.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Tomasa Heiskell and the United States of America respectfully request the following relief:

A. Find that the Defendant violated the False Claims Act and are liable to the United States of America.

B. Assess a civil penalty against the defendant for each separate violation of the False Claims Act in the amount of not less than $5,500 or more than $11,000.

C. Award the United States three times the amount of damages that it sustained as a result of the defendant's acts.

D. Award Tomasa Heiskell the qui tam plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. §3730 (d).

E. If the United States government does not proceed with the False Claims Act action, award costs and reasonable attorney's fees to Tomasa Heiskell.

F. Find that the defendant violated Massachusetts G.L.c. 93A and that Tomasa Heiskell is entitled to money damages.

G. Find that the defendant breached the covenant of quiet enjoyment of tenancy with Tomasa Heiskell, entitling Ms. Heiskell to money damages.

H. Award Tomasa Heiskell costs and reasonable attorney's fees.

I. Grant whatever other relief is just and proper.

Respectfully submitted,
Tomasa Heiskell,
By her Attorney,

/s/ Caitlin M. Duane

Caitlin M. Duane, BBO# 697051
Andrew C. Musgrave, BBO# 678980
Fenway Health Legal Services
75 Amory Street
Boston, MA 02119
Phone: 857-313-6780
Fax: 617-655.9264
Email: cduane@fenwayhealth.org

Dated: January 31, 2022